in case 247351, Pitchford v. Cain. Mr. Perkovich? Mr. Chief Justice, may it please the Court. In the selection of Terry Pitchford's capital jury in 2006, the trial court grasped and conducted just two of Batson's three steps after the district attorney struck, in succession, four black citizens. Despite the State's assertions throughout the red brief, the judge never determined the credibility of the prosecutor's step two proffers. Had the judge done what Batson demands in step three, the Court would have considered, from the voir dire that single February morning, the prosecutor's absence of questioning about the issues and the proffer's lack of record support and irrelevance to the case. What is more, proper credibility determinations would have concerned numerous extreme bad faith findings against this district attorney in two Mississippi Supreme Court capital reversals published in 2003 and 2000, which held this prosecutor had fabricated prior statements to impeach four witnesses who were black, and in closing argument, espoused 14 discrete lies about the record. Instead of abiding Batson, Pitchford's trial court careened to opening arguments. When the defense strained to be heard before the jury's impoundment, both about Batson and a fair cross-section challenge, the judge assured her three times the Batson objections were preserved. Yet the Mississippi Supreme Court found that Pitchford's defense failed to rebut the proffers and thus waived argument, while deeming the merely raised neutral proffers as, quote, acceptable, a pale substitute for Batson's demands, and a sidestep of the trial court's failure to determine the credibility of the four strikes. The trial court's own rectified failings in this prosecution, also riddled with other misconduct, yielded a jury selected with discriminatory taint, which in turn condemned an 18-year-old whose accomplice, according to the state's case, killed the shopkeeper in this botched robbery. We urge this court to reinforce the Equal Protection Clause with guarantees for defendants as well as citizens willing to accept the awesome responsibility of jury service. I welcome the court's questions. Did trial counsel make those arguments? Mr. Justice Thomas, which argument specifically do you mean? Did the trial counsel make the argument that the prosecution discriminatorily picked the jury or exercised parenteral restraints for the reasons you just stated? Justice Thomas, trial counsel made the objection timely. What was the objection? It was a Batson objection. And did trial counsel have the burden of demonstrating discrimination, right? Justice Thomas, that's correct. So did trial counsel do that? Justice Thomas, trial counsel attempted to engage that process, which entails three steps in burden shifting. Unfortunately, the third step did not occur in this case, notwithstanding trial counsel's effort. What do you mean by that? It didn't occur? The judge decided that it was race-neutral? Respectfully, Justice Thomas, yes, that's all the judge did. But did the trial counsel offer an argument or evidence that the reasons offered by the prosecutor were pretextual? Justice Thomas, as the veneer was being released from the court, trial counsel sought to be heard on Batson and a fair cross-section issue and was told by the trial judge repeatedly that her record was preserved. But didn't trial counsel subsequently file an affidavit indicating that she did not raise these objections? Justice Thomas, yes, that's correct. Three years after the decision that's before the court now in state post-conviction, an affidavit supporting an ineffective assistance of post-conviction trial counsel was authored, which hews very closely to the decisions before the court. It just mirrors what was ruled by the State Supreme Court in 2010. What the transcript shows is that Ms. Steiner's — what she said is at some point the defense is going to want to reserve both its Batson objection and a straight 14th Amendment racial discrimination. Was that objection raised later on? I mean, I think that's where — that's the preface to where you say that three times the court said you have that. And I wonder if there was some confusion between the reference to at some point the defense is going to want to reserve and the court's statements that it is — you've already made it in the record. So I am of the opinion that it is in the record. Mr. Chief Justice, thank you for that question. It allows me to clarify the sort of — the goalposts on this question under Mississippi procedure. When the veneer is dismissed and the jury is empaneled, the opportunity to challenge Batson essentially ends or does end. Of course, there are, you know, post-trial motion practice that can occur. So the relevant time for this to be addressed, which the defense counsel was aware of, and that's why she strived to speak to that issue in a separate fair cross-section issue when it was still relevant for the trial court's decision. So I don't think that the defense counsel was seeking to sort of put a marker to be able to return to it, because there is really — that was the point of no return for the judge. Well, but she did say at some point she's going to want to reserve. I just wonder if that's a source of some confusion for the judge or what we're supposed to do with that potential. Well, Mr. Chief Justice, I think if you see sort of as the colloquy goes down the page, as you pointed to, it's clear in the record three times. Then the judge turns to reiterating his ruling, which, again, is merely a step-two ruling as to race-neutral findings, and he says, so there is no Batson violation, drawing a line under the Batson colloquy at that point and then shifting to the other issues, meaning that fair cross-section challenge I spoke of. Could we interpret at some point from the defense counsel as an indication that she was preparing or prepared to make the showing and she was asking the court for the opportunity to do so? Justice Jackson, yes. I think that that is the fair reading and an unmistakable reading of this record. I mean, it does indicate that she was suggesting that she would like to do something. It wasn't as though she felt as though the Batson objection was already, or at least her arguments were perfected. And it sounds to me from the transcript that the trial court was cutting her off, was not giving her a chance, was maybe mistakenly saying that it had already been done. Yes, Justice Jackson, if I could pick up on that last point. I think the cold record here, and it is a cold record we're working with, of course, indicates that if you look at page 168 in the JAA in terms of that initial colloquy, when the Batson challenge is raised and Miller L is invoked, the judge is sort of reflecting a disorientation to what the Batson inquiry holds, which is three steps. He is speaking to the race neutral proffers that correctly are the second step, but he's unclear whether this goes to all of the stricken veneer members or just the black stricken veneer members on 168. And so you fast forward to the proffers that are put forward by the prosecutor and you see in rapid fire within a page the finding of race neutral, race neutral, race neutral, race neutral, let's return to striking the jury and the court instructs the defense to continue the peremptory strikes. And so at the first moment where there is an opportunity to speak to this, defense counsel returns to the issue and seeks to be heard on it. And as noted, it's told three times in a row, it's clear in the record, and then a reiteration of the ruling. After the point that Chief Justice raised, at some point the court responded, you've already made it in the record, some of the opinion is in the record, and then the defense counsel says, I don't want to let the paneling go by without having those objections. And then the court says, I think you've already made those and they are clear in the record. And for the reasons previously stated, the court finds the reasons were race neutral. So it continues on. I guess how we read that confusion is critical to whether there is a waiver here or whether it was unreasonable to find a waiver here. That's right, Justice Kavanaugh. And of course, that addresses the D2 considerations in the trial in terms of the mishandling of this, but reading that record and determining whether this is a reasonable determination that this defense counsel on this transcript had forfeited or failed to rebut when her effort to be heard on the matter was clearly addressed. Counsel, in the post-trial motion that was made here, the jury was impenitent right after the exchange the Chief made, so there was no time to make a record there.  In the post-trial motion that was made by Petitioner's Counsel, I believe she did raise a Batson challenge and she did raise the pretext argument directly, didn't she? Justice Sotomayor, that's right, and that's very salient because that is, on this record, the first opportunity meaningfully to speak to the pretext question and comparison issue. Once the judge decided to panel the jury, the only time really to raise it again was on post-trial motions. That's correct, Your Honor. And she did. She said the reasons were pretext given, I don't have the exact language or maybe you have it memorized, but given the same, the voir dire was similar, they gave answers similar to the general public, to the other people in the pool, correct? Yes, Justice Sotomayor, and that's drawing from questionnaire responses because there was no voir dire to speak of of the stricken individuals here. Counsel, can I ask you how you think that the voir dire or the interchange, sorry, between counsel and the judge should have gone? One thing I find challenging in reading the transcript, it doesn't record pauses, right? It doesn't record seconds, and so if we had a transcript here where the judge said, sit down, counsel, I don't want to hear anything more from you, that would be a lot clearer, right? I mean, but we're in D2, so, you know, the state's getting a lot of deference here. What do you think the judge should have done? Justice Barrett, what we see commonplace in our courts is the court turning to the defense and offering the floor in some fashion. Agreed, we don't have sort of an audio recording. We can't sense whether there's a pause here, but I think the context is really important, and this is a jury selection process with a voir dire that took about three hours. To put it in context, the Miller-El case, obviously it's really important here. But you're not really answering my question. When she raised the objection, when she said she wanted to preserve it for the record, all she had done at this point, I mean, you're right, there are three steps. So she raised the objection, the prosecutor advanced the race-neutral reason, and she had the opportunity to impeach that reason, essentially, right? Respectfully, no, you're wrong. Well, let's see. That would be the third step. What you're saying is that the judge cut her off before she reached that step, correct? Yes, Your Honor. I mean, I understood the fair cross-section point to be part of her effort to impeach, not just a distinct argument. Am I understanding that wrong? Justice Barrett, I'll point you to JA 161 through 163, where there is a submission of this fair cross-section argument. But she wasn't making that point also in reference to the Batson challenge. There's some overlap because of the general issue with the jury, but it's a discrete challenge. And that shows up in the appellee's brief and the ultimate decision. Okay, so I guess here's my specific question, if you could tell me what you think the judge should have done, because she raises the objection, the prosecutor offers a race-neutral reason, she does raise, I mean, she speaks up, so she's able to make this cross-section point, which goes to, you say, there's some overlap. Should the judge there have paused to, I mean, so is the idea here that the judge should have paused and said, do you have anything further to say to show that this was pretextual? Justice Barrett, there's sort of two junctures here within five, six pages of the JA that are important. The first are after the race-neutral determinations are made, the court then immediately instructs the defense to start striking the jury with the panel that's in the box. So after that's done and before the veneer is dismissed, or as the veneer is dismissed, the defense attorney returns to the issue and speaks. But did the defense attorney have an obligation to speak up, even at that other point, and at the first point you're describing, and say, this is why, I mean, usually we expect lawyers to assert their points, to assert their objections, so I'm just wondering, does the judge have an obligation to stop and elicit a response, or is it the defense counsel's burden to, because the defendant bears the burden of proving the Batson challenge, right? Yes, Justice Barrett. In a situation where you have four strikes that are being addressed in succession, and the court elects to deal with the step two all in a row, it would be reasonable, and certainly kind of the only way to encounter what's transpiring in that back and forth between the prosecutor and the judge, to expect that step three will occur after that. But did the defense counsel have an obligation to raise the point? The court has an obligation to conduct step three in the first place. The burden of persuasion remains with the defense counsel throughout all this, but it also coexists with a parallel duty that the trial court has to make its determination, and critically... So are you returning to the argument which was addressed, the Fifth Circuit got to this point, that you're saying that the trial court made no determination about whether there was a Batson finding? Yes, Justice Barrett, that's what this record reflects. Counsel, I think if you look at Perkett, Hernandez, and Shiner, they answer Justice Barrett's question in that the obligation is on the trial judge to make a finding on step three, correct? Yes. To clarify, though, I agree with that. I was just talking about the argument about... My follow-up to that was, I think what you're saying, given the transcript, is I think the judge believed he only had to find a race-neutral reason, because he says that at the very beginning of this process. He says, at times, a lot of times on Batson, I just have the state give race-neutral, I'm assuming he meant right, neutral reasons, as to all. And she says, I think the jurisprudence simply states the court must make a determination on the basis of all the relevant circumstances to racial discrimination. The judge then says, I'll have the state give race-neutral reasons. And after each race-neutral reason is given, he then asks for the next one, and the next one, and the next one. And I think your point is, he never pauses to give her a chance to address pretext, correct? Right, Justice Sotomayor. Or for him to make the required third step finding. This is an exchange between the prosecutor and the trial court for all four of the step two steps. Mr. Perkovich, what happened here is certainly not a model to be followed in future cases. But I wonder if you would agree that in interpreting this transcript, we can take into account the way defense counsel generally behave in a situation like this. Justice Alito, if you could clarify that question of defense counsel's general behavior. Well, this is the most timid and reticent defense counsel that I have encountered. Any competent defense attorney that I knew would have spoken up. Take this example. This is on 169, juror number 30. The prosecutor is called upon to give his race-neutral reasons. He says she has mental problems, according to a police captain. They've had numerous calls to her house and said she obviously has mental problems. And then the court says that would be race-neutral as to that juror. And nothing is said. With respect to all of these jurors, all the defense counsel I have known would be standing up and say, Your Honor, that's a pretext, and so forth and so on, to make clear that the point is driven across to the trial judge. I don't understand what happened here. Unless, well, anyway, I don't understand it. Well, Justice Alito, I think the fact that this is sort of a two-person conversation very clearly from the record, and that these strikes were clustered, reflected what was going on in that courtroom with the judge just addressing the steps in succession. I think the reasonable expectation is that defense was going to be heard and that third step just did not happen. Rather, the court instructed her to strike her panel. And she returned to this once there was that opportunity that we've already discussed. Yeah, but I know. You know, trial lawyers have to have a certain amount of toughness and that she had every opportunity. The judge didn't handle this the way it should have been handled. The judge should have said, Okay, that's your reason. Defense counsel, what do you have to say, if anything? That's what should have been done, but really, she had every opportunity to make her point, and she didn't. It's not a case where the judge said, Shut up, sit down, I'm going to hold you in contempt if you say anything more. Justice Alito didn't get to that kind of pitch, certainly. However, the way this rush process occurred throughout the whole morning culminating in the strike, as I was starting to answer Justice Barrett, in context, Miller L. Wadier took five weeks with a veneer that was 108 people as opposed to 96. So the rushed nature of this, I think, informs how we make sense of this record. Another example of how rushed this was, because I think the judge was very sensitive to the sequester jury's hardship, the liability phase ended a day earlier than expected. And afterward, counsel sought to have a continuance of the day because their single expert was subpoenaed in Texas. The judge denied that and forced counsel to proceed without their single witness. Counsel, I appreciate all of that, and I understand this was not a model by anybody's stretch of imagination, but I didn't see where the defense counsel even mentioned the word pretext to the court anywhere in the transcript until after trial. And given that, could somebody read this as saying, I don't have a pretext argument? You know? I mean, one of my colleagues emphasized under D2, so we're not asking, did she waive? We're asking whether the Mississippi Supreme Court could reasonably, if any reasonable jurist could reasonably conclude that she waived the argument by not mentioning even the word. How do I get help with that? There's a fair amount to unpack there, Justice Gorsuch. I'll try with the waiver question as sort of the end of this process. So before that is a finding, a determination from the Supreme Court that there was a failure to rebut. And again, the effort is to be heard. The response from the court is this is clear in the record, and then the line is drawn under Batson, and a shift is to the other issues. So the moment of truth for that was then, and as Justice Sotomayor pointed out, in the motion for new trial that was the first sort of opportunity in terms of the basic procedure here to speak to that, which was done. Now, the D2 point is critical here, but also there's a D1 implication in this breakdown. Well, help me with the D2, because that's what I'm struggling with at the moment. We have to decide whether the Mississippi Supreme Court made an unreasonable determination of fact. The determination of fact here is that she waived or really miraculously forfeited. But it's her burden. We all agree on that, to raise pretext. She didn't raise pretext at all. Well, Justice Gorsuch, if I may, so there is a burden of persuasion that sticks with the challenger, the opponent of the strike, and that's the defendant. There's also a duty that the court has, and that's first and foremost here. I appreciate that. And that duty is twofold, and that is to make a determination irrespective of what's pressed by the advocate. And so there is a parallel sort of decoupling of it. That is really important here. But you would find no Batson violation if there is no pretext argument made, right? Respectfully, no. Actually, the cases are quite clear in that regard. If the plaintiff says, I'm sorry, the defense lawyer says, I don't have a pretext argument, Your Honor. Well, that would be... Then there's no finding required on pretext, right? No, Your Honor. Actually... That's a Batson violation, wouldn't you? The burden of persuasion is with the opponent of the strike, clearly. And if the strike effectively expressly waives in that scenario...  If step one, step two, the government's lawyer comes up with race-neutral reasons, step three, suppose the defense lawyer says, I have no pretext argument, Your Honor. Since the inquiry has made it to step three, the trial court still has a duty... Sure, to say no Batson violation. Isn't the duty to look at the totality of the circumstances to determine whether or not the defendant has carried their ultimate burden of establishing discrimination? So it may be that with respect to that particular aspect of the back and forth, the defense counsel doesn't have an argument or they say, I don't have an argument. But that, I think, is not the sum total of the court's obligation to rule on the Batson objection. The defense counsel didn't withdraw the Batson objection. They just didn't make any argument with respect to pretext. To be clear, I appreciate all of that. And I appreciate that the court has to make a determination. But the court here did make a Batson determination. It said, I find no violation. Now, maybe that's wrong, okay? And I acknowledge it. It's a muddled record. But he didn't say, I find no Batson violation at the end of it. Maybe that's insufficient, but that's not what's before us. What's before us was their waiver. And help me with the D2 thing. I really want some help on that. I'm trying, Justice Gorsuch. But the key thing here is that his understanding from this record is of two steps. In other words, the equation is race neutral equals no Batson violation. It completely elides the duty he has to do two things. Once the case shifts to step three, the court has to afford an opportunity for the ultimate burden of persuasion to be met and make a determination, whatever is said, in pressing that burden of persuasion. Those things exist in parallel because the Equal Protection Clause is implicated here, because there are concerns that are greater than the defendant's, the stricken veneer member, the public's interest. And so all of that was jettisoned here. And I think it's simply because he was unaware of it, at least in this trial. Thank you. Thank you, counsel. Justice Thomas, anything further? Justice Gorsuch asked you what would happen if the defense counsel said, I have no pretext, no refutation, no argument on pretext. And you said that there was more that the court was required to do in making the determination. What exactly is that? What do you mean by that? So, Your Honor, it's incumbent on the trial court to assess what is before the court. So what is before the court? You've got the initial assertion. You've got the race neutral from the prosecutor. And you have a defense counsel who says, I have nothing. So what else is there? Justice Thomas, you have a prosecutor who failed to question on the reasons that he put forward as his proffers for these strikes. Were those challenged by the defense counsel as pretext? As we've discussed, Justice Thomas, she did not speak to it after the step two proffers. And that's one of the failings in this record. There was not an opportunity after the step two proffers were made and before the Batson challenges were overruled to speak to that. So you used Miller-Ell, which brings back a lot of bad memories. Sorry. You used Miller-Ell as your model. But didn't the defense counsel there challenge the race neutral assertions? Justice Thomas, there is a radically different record in Miller-Ell from here. The only portion I'm interested in is whether or not defense counsel made, whether or not defense counsel argued that this was pretextual. In Miller-Ell, there were days of opportunity to address each of the strikes. There was individual voir dire of each of the stricken members. There was a Batson hearing held dedicated to this whole inquiry. Is that because the defense counsel challenged each of the strikes? Well, no more than was done here, Your Honor. There's no question that the Batson challenge for the four strikes in question here was timely, never waived, never withdrawn. Let me ask you. I mean, we're focused on these strikes. Did the defense counsel make strikes, peremptory strikes? No, Your Honor. And one reason for that is because, well, I misspoke, I misspoke, please. Bear with me. No, they did. They certainly did. And how many? I believe it was 11. And what were the races of those who were stricken? I believe they were white. And you have to also realize that the veneer was white for the balance of the strikes that they exercised. So there was no other option. And how many were stricken by the prosecutor? Seven. And how many, what was the racial breakdown? Three to four. Justice Alito? Well, I want to understand exactly what you think has to happen in a situation like this. So the prosecutor, the defense counsel says, I object to the peremptory challenge of this juror. And the trial counsel turns to the prosecutor and says, what is your reason? I think the primefacient case has been made. What is your reason? Prosecutor provides a reason that's race neutral and is a reason that almost every prosecutor would find is a good reason for peremptorily striking a juror such as here, one of the jurors. He has a brother that has been convicted of manslaughter. And considering that this is a murder case, I don't want anyone on the jury that has relatives convicted of similar offenses. So it seems legitimate on its face. Now, maybe it's not. And so then the trial judge turns to the defense counsel and says, defense counsel, anything to say? And defense counsel says nothing to say. Now, what about there? Is that, and then the judge goes on. Is that that's in violation? Justice Alito, in that hypothetical where the court actually turns and solicits input, that would probably be a waiver on that scenario. What I want to point to with respect to the proffers and family members listed in the questionnaires as implicated in the criminal legal system, the important thing to keep in mind here is that if that was a sincere concern, it would strongly suggest there would be questioning about that because not only are the various stricken veneer members implicated in that, but others. I understand all that. The defense counsel had the opportunity to question these witnesses. I mean, these jurors. Yes, Your Honor. On the voir dire. So, the defense counsel could say, well, look, he's been very, you know, he's happy to have these white jurors who have similar records. Then the judge has to make a finding. But if the defense counsel doesn't say anything, Justice Alito, what is the judge supposed to do? Justice Alito, my response to your last question was there was questioning during the group voir dire. There was no questioning at that point after the proffers were made. And, again, very legitimate concern in principle implications in the criminal legal system. However, if that's a sincere concern, there's going to be questioning about it. And I think if we look at Miller-El, there's a classic example of why. And that is with the field strike in Miller-El.  I understand. But your argument is that even in the example that I gave you where the judge says, defense counsel, do you have anything to say about this? And the defense counsel says, no, nothing to say that there could still be a violation. No, I'm conceding that, your honor. So then the question is how do we interpret this record? Suppose the judge doesn't actually say that, which the judge should, but suppose defense counsel, as Justice Barrett was hypothesizing, could happen in some case or, you know, defense counsel and nothing is said or there's a pause and nothing is said, then what? Well, if there's a pause and nothing is said, then that's a different record from what we have. To return to the, sort of, these legitimate seeming race-neutral reasons, again, the disinterest in questioning on any of the reasons that are offered there is,  repeatedly recognized by this court as denoting a sham. In fact, that's language in Miller-El and Snyder as well. And so, you know, it's not that that's not an imprintable legitimate reason. It's that it's not explored because often when it is explored, what comes to light in that process is that the family member really has no connection to the situation and it's not disquieting for the prosecution and they wouldn't use it as a reason. Of course, yeah, but that all is triggered by defense counsel standing up and saying, Your Honor, I object. That's a pretext. The prosecutor has not applied that rule to white jurors as long as it was required. Justice Alito, I'm referring to the duty that the court has whatever is advanced in terms of the burden of persuasion that the opponent has. The court still has to be aware of what has transpired in his courtroom and what has come forward in voir dire what has not come forward in voir dire in terms of  the irrelevance of the profferist to the case the absence of record basis. You have proffers here, mental problems, drug problems, there's nothing in the record on that. And so the court just takes that on face value and that's not the job. The job is to consider all the circumstances and to discredit proffers that are put forward without a basis in the record. None of that The prosecutor says, I'm striking this juror because she has mental problems and the defense counsel says nothing in response. The trial judge has to say,  wait a minute, you know, you're just telling me the police captain says that she has mental problems. They've been to her house many times. We have to have the police captain come in here. Even though the defense counsel hasn't said one word, we have to have the police captain come here and  the officers who made the visits to the house. Is that what you're saying? Justice Alito, those officers were in the courtroom under subpoena first. I don't want to prolong this. I'm just trying to understand what you think had to happen here. Your first answer was, if the defense counsel says nothing, nothing to say, Your Honor, the judge can simply say,  fine. I find that it's not a racially based challenge. Justice Alito, as I've been trying to advance, there still is this duty for the court to consider all the circumstances bearing on racial animosity in this record and to make an informed decision. On this record, you have a defense counsel seeking to be heard on this, and the response from the court is, your case is in the record, and I'm going to reiterate my ruling. I understand. Justice Sotomayor? Going back to that point, what's clear from the record here is as soon as he exercises a challenge against the woman with mental problems, the prosecutor then says, the next juror, juror number three, she was juror number two, and the court interrupts and says, that would be a race-neutral reason as to that juror, meaning the mental juror, and the  immediately goes to S3. So there's no pause  No pause between the four jurors and the race-neutral reasons. So there's no chance for the defense attorney to say anything, correct? That's right. Now, you get to juror number four, the same pattern, I'm sorry, juror number five, and then he gets to the last juror that's being discussed in race-neutral reasons, and he immediately says to her, you have to start with jury selection. That's right. Again, there's no pause to say, do you have a response? When you're saying to Justice Alito that defense counsel should have asked questions of the jurors, she was never given an opportunity, you're saying, because the  not asking    Correct? That's right, Justice Sotomayor. As I pointed out earlier, the proffers were not questioned, so the only questioning that this prosecutor did of consequence was to do death qualification, which resulted in the decimation of the black veneer. So you have a concentration of  where in rapid succession he's questioning I think 37 different veneer members, 28 of them black, to elicit responses that lead to cause strikes. That's the level of  that's going on in this record. There's essentially no individual voir dire at all. There are six individuals who are questioned near the end of voir dire.  defense counsel can't be faulted for not knowing what the   was worried about. Now going to the question that at no point did the justice say did the judge here say I'm doing step three in any way that these were not pretexts or that I find them to be both race neutral and not race-based, correct? That's correct. Now that's your prong one. And justice Gorsuch was asking you whether the judge made an implicit finding. The only place I find that potentially is where he says for the reasons previously stated first the court finds there to be no well all the reasons were race neutral as to members that were struck by the district attorney's  and so the comma the court finds there to be no bats in violation. That's not an  finding on step three because he's still relying simply on step on the race neutrality correct?  justice Kagan. Course it's  I don't see how you can read that and take away the suggestion of anything more than determination of race neutrality. There's a big difference between race neutral and credible and that court has to   just on Justice Thomas and Justice Gorsuch's questions. If the trial judge said do you have any response they said we have no pretext argument that's the essential equivalent of withdrawal ing that   an objection. At least that's my view. But what happened here I gather your position is in what  Mills found was Judge Mills said perhaps Pitchford's counsel should have been more assertive but the court will not fault them for failing to present specific arguments on pretext when the trial court appeared to have been resolute in its determination that no violation had occurred. In other words, there was never an opportunity. The question is whether that what happened in the trial court was an unreasonable  it's unreasonable defined waiver, I guess, or how you analyze the trial record. But the point is not that the trial counsel said oh, I have no pretext argument. Correct? Would you distinguish those two things? Yes, Justice Kavanaugh. What we have is trial counsel seeking to be heard before it's too late. As the veneer is being  that's when she's seeking to be heard and she's rebuffed three times by it's clear in the record there is no violation. Let's turn to the other issues. She's striving to be heard and ultimately she's reasonably relying on the court saying it's in the record. This is in the context where she raises Miller L which had been decided about six months before this trial where clearly the ability to press a case on appellate review was the letter of the day. She's relying on the court saying this issue is over and the trial is moving forward and opening argument is going to happen in a moment. What do you think about judge mill's comment perhaps should have been more assertive? I think first that's not unfair criticism. We've all seen records where there's more assertive  The point is that she timely raised the objection. That's her duty. There's not a continuing objection requirement. She sought to be heard before it was too late. At the next moment where she could address these issues in the motion for new trial that was done. It was fit for purpose. If the judge was actually concerned about these issues he had an opportunity to take the case back before it was up on appeal. A few clarifying questions about your position. One, you're not asking us to revisit Ford in so far as it said the state has the right to come up with rules of forfeiture even for BAPM objections. The implementation is left to the states. As we've seen in Johnson versus California where there was a step one issue California had, there can be problems in that. What we have here with respect to step three and this particular ruling on waiver and the failure to provide being the predicate for that is an example of faulty implementation. But you're not challenging the state's ability to set forfeiture rules and to say that if you don't make a timely objection you forfeited it. I'm asking as a general rule, I understand your argument that she wasn't given a fair opportunity here. I'm not asking about that right now. I'm just saying you don't disagree do you with the fundamental proposition that a state can establish procedural rules requiring the timely assertion of that objection. The other question I have, it's a little difficult to tell at some points in your brief, I think you  that the Mississippi Supreme Court had a duty to conduct the comparative juror  I think the first point here is that the understanding of its own law for  was that it could not. It was unable to  arguments for the first time on  especially in a context where the first opportunity to do that was on appeal. That's a  So it's that fundamental misunderstanding of this court's law and that basic gateway role at the outset of the appeal that is the first problem. It's  an obligation to do it. Justice Barrett, this court's holdings have relied repeatedly on comparison that's been pressed in the first place on  Is it an obligation or do you just have the  Just pick one. I'll pick discretion. We have the caveat that the language of this court is a must. It's not how I read our  So you're asking for us to take those precedents. If there's any ambiguity to take them a  further? I think the precedents have to be surmised from what the court is doing and how it's getting to the results. What the court has done routinely is take argument comparative analysis that's really not viable in most trial settings and hear that on appeal in the first instance because of the concerns I was speaking to earlier. Do you think we have what we need now? I think unfortunately that was the ball game for the state Supreme Court. They elected not to do that. They had in that fork in the road they could have taken what was submitted on appeal and make a merits decision or remain there.  evidence in the record on the  juror point? It's your position that the record is there and the  Supreme Court could have based on the record before it or that we could now say there was a Batson violation based on what was introduced about the record. Is it your position that that comparative analysis is sufficient and the Supreme Court had what it needed to find a Batson violation based on what you had? Yes, and the court had done that in other cases. I would like to get your reaction to what I hear your argument as and I just want to make sure I've got it straight that the making of a Batson objection at the beginning of this process actually triggers duties on both the party's part and the court's part. So obviously you make the objection and then we say at step one the defense counsel has the duty to establish whatever the case is, the burden then shifts, the duty becomes the states to offer race-neutral non-discriminatory reasons, and then ultimately there is a duty of the court to actually resolve the objection. So the initial Batson objection, so to the extent that people have asked what was supposed to happen here, I suppose if we're in a world that Justice Thomas posits, if the defense counsel, when we get to step three, the trial court says counsel and defense counsel says, Your Honor, I have no argument on pretext. Well, first of all, you would, I think, expect the court to say, so are you withdrawing your Batson objection,  I mean, Justice Kavanaugh says, well, that's sort of implicit, but I think the court, because it has a duty to resolve the objection, has to be clear about whether this thing is still on the table once counsel affirmatively says, I don't have any pretext evidence. So right there, we have a problem with the court not clarifying whether this objection is still live. In the world of even asking. But in the world of not asking, not asking the defense counsel whether there's any pretext evidence, you would still have the court have to resolve the  right? I mean, you would expect the court to say something like, hearing no evidence or argument related to pretext and seeing no basis in this record for determining that the prosecutors' race-neutral reasons were pretextual, I find that there is no race discrimination or whatnot. Right? Like, the court has to make a finding that indicates that it's actually resolving the objection on the basis of all of the evidence presented after all of the steps. And it seems to me that there's kind of like a problem here, the lack of clarity is a problem for the court, because it suggests that the court did not fulfill all of its obligations triggered by the initial Batson objection. Does that comport with sort of what you're trying to say at least about what the court's duties were here? Yes, Justice Jackson. Again, counsel has a duty to press the case and the ultimate duty or burden of persuasion, but that's simultaneous with the duty that by the time this gets to step 3 in the burden framework, it remains with the court to do the things that you've outlined. And the   I don't understand how the court could have fulfilled its obligation to look at all the evidence if it has prevented essentially one party from presenting. Let me just ask you another final question. I see this also as possibly a very short opinion. When we look at what Mississippi's  Supreme Court said, it would go something like Pitchford's trial counsel made a Batson objection and re-raised it multiple times. Each time the trial judge reassured her that it was  nevertheless Mississippi's Supreme Court said it was  That's unreasonable. The end. What would be wrong with that? Not anything I can think of. I mean, we could say more because with respect to D2 obviously there is a breakdown in that fact determination that becomes a waiver under the  rule. With respect to D1, another way to look at this is this is a case that I don't think this court has seen where it just falls off the ledge at step two. So that's a D1 failing categorically. There's an absence of that step being taken for the reasons you outlined. Thank you. Thank you, counsel. Mr. Stewart. Mr. Chief Justice, and may it please the  in Flowers v.  this court faced an extraordinary case and ruled against the State. This case is also extraordinary but in a very different way that requires a very different result. Start with the facts in D2. Petitioner claims that the State Supreme Court was objectively unreasonable in finding that he waived his pretext arguments. Petitioner once admitted that is wrong. Years ago Petitioner declared that he failed to properly challenge and preserve his pretext arguments. Petitioner also now claims that the trial judge thwarted his efforts to argue pretext. Years ago he said the opposite. He declared that he made no attempt to rebut or otherwise offer                 to     After the prosecutor has done all his here's my race-neutral reason, here's my race-neutral reason, and then the defense counsel says I'm not persuaded, I need to say something about this. I still have an objection. At that point she must be objecting to the fact that either the race-neutral reasons aren't credible or they're pretextual. That's what she's objecting to. There's no other way to read the context of this colloquy without saying that at that point she's objecting, she's saying what the  gave you wasn't enough. I agree that she is maintaining her Batson objection,  I don't agree about the comparative juror pretext arguments that she made no suggestion of making despite many opportunities. I think you're arguing this on the merits. I think you're saying she didn't say enough to allow the courts to find for her. But that's not the  She might not have presented a good argument but she didn't waive her argument. Respectfully, Justice Kagan, the Mississippi Supreme Court didn't say she waived the argument writ large. It said she waived the pretext arguments that she never presented to the trial judge. That's critically different. Justice Graves in dissent my friend in his petition agreed that the Mississippi Supreme Court resolved the claim on the merits. It held that the  pretext arguments that she had never made to the trial judge, that's what she waived. After the prosecutor gives the asserted reasons, what else could she be objecting to other than that  pretextual? I think she's saying I believe I made my case. No, answer my question. After the prosecutor has given the asserted reasons, what else could she be objecting to other than that they were pretextual? Are you talking about page 175? Exactly. Okay. I think there she's just making sure that her objection is  What else after the asserted reasons, and she goes back to Batson, at that point, what else could she be objecting to other than that the asserted reasons were pretextual? I think it's the ultimate conclusion the trial judge reached, that they were race neutral in fact and she hadn't shown discrimination. That's why she uses the word reserve. I'd like to reserve my Then that's the first sentence. The second sentence, I don't want to let the paneling go by without having those objections. I think you've already made those, says the judge, and they were race neutral. Can I ask a separate distinct question, just one question, which is in the course of that  the court says, and this is now a D1 question, the court says, all the reasons were race neutral as to members that were struck by the district attorney's office and so the court finds there to be no Batson violation. Is that a legally correct analysis of  It is in that it means he's finding the reasons to be race neutral in fact. Is that the end of the  analysis in your view? If he's finding them to be the actual reasons, the race neutral reasons, then yes. If they're race neutral, is that the end of the  analysis? If the question is just are they facially race neutral, then that's step two, Your Honor. And that's not the end of the Batson inquiry. Thank you. Whether in the end they are race neutral is the question, right? That's right, Your Honor. And as to what she was objecting to, if she  tacitly raising a pretext argument, what she said on 176 is allow us to state into the record there is one of the jurors,   that was selected, was so starkly different from the racial makeup of the county that that would be sufficient to find that there were Batson violations. That's right, Your Honor. And actually in the cert petition at page 38, the petitioner emphasized this point as being part of the  presentation. Counsel, I don't know how that could be. She starts her colloquy in that section by saying, at some point the defense is going to want to preserve both its  objection and a straight for 10th  racial discrimination. That reference, I don't think it was on the 10th amendment. I think what she meant was the earlier objection that they spent a lot of time on the cross whether the jury pool was a representative body. Correct? There had been   on the Batson argument. The court starts with that and says you have already made it in the record so I'm of the opinion it is in the record. She says I don't want to let the paneling of the  go by without having those objections and the  things. I think you already made those and they are clear in the record. For the reasons previously stated, he says all the reasons were racial, neutral, blah,   The other issue is the jury pool issue. I have already ruled based on prior rulings from the United States Supreme Court and the state of Mississippi that jury selection was appropriate. That the jury itself, the pool, was appropriate. And those are noted for the record. It is then when she starts talking about the jury pool as a whole and not on the  question. So I'm not quite sure that you are fairly representing her use of that one example or their colloquy on that one  Let me cite you something that shows it is a fair representation. It is page 38 of the cert petition where he says that the jury pool is appropriate for jury selection. And that is a fair representation of the jury pool.   is a fair representation of the jury pool. And that         that discussion was in reference to the jury composition issue and not the  issue. So regardless of what was happening in the cert petition, I'm talking about what's going on in the trial record in the discussion that they were having. It looks as though the court resolved the bets in question by not giving her a chance to make any more arguments or say anything more about it. And then he says the court then as to the other issues and he moves on to composition and that's when she starts making statements about 12 or 14 jurors or non-white. So I think we have to be clear about what's actually happening in the record and not ascribe to her representations that actually don't fit. My friend conceded this morning that that point went to her trying to   she could conclude this. I'm not talking about the question. I'm talking about what the court said they were talking about at that moment. He said and then as to the other issues and there were two issues and the other issue was about jury composition. That's the one that she responds to with the relevant facts. I don't agree. He conceded otherwise. She did it without prompting. She said the more she wanted to say and even when she had that opportunity she did not present the comparative juror argument. I don't think it helps to misrepresent what the record obviously shows. Let me ask you another question. It seems as though the Mississippi Supreme Court is trying to have it both ways with respect to the significance of her arguments related to  Is it your position that her argument was so central that the failure to present it waives any obligation of the court to rule on whether the reasons that the state has given are race neutral and therefore there's no violation here because she didn't say anything about it or as you interpret the record that alleviates the court of any obligation to say that's one thing that I think the Mississippi Court is saying. But on the other hand, they also say it isn't necessary for the court to give her a chance. So either it's central in which case the court had to give her a chance or it's not central in which case the court had to rule on it, I think, regardless. So which is it? I'm not sure I'm completely following the question, Justice Jackson. What is the significance of her argument related to pretext? Is it so necessary that without it the court is relieved of any obligation to continue to look at the facts and to actually make a  Or is it not necessary in which case it seems to me that the court needed to do that regardless of the fact that she didn't bring any argument about it?  So I think if you get past step two, the court has to make an ultimate finding on nondiscrimination. But it does so in light of the party's submissions. No precedent in this court requires the judge to consider matters, especially intricate comparative juror arguments that are not presented to  I mean, that's something this court in light of the party's evidence does not have the obligation to turn to her and say, what is your evidence about this? The court doesn't have to solicit the evidence from this party or give her an opportunity to present it. Well, it doesn't have to affirmatively do that. There's every indication in the record here, and a reasonable person could certainly read the record to allow multiple opportunities to present that. There's nothing supporting the idea that the trial judge cut her off, or certainly nothing compelling that view of the record, Justice. Thank you, Counselor. Justice Thomas, anything further? Yes, General Stewart, you were about to discuss the role of AEDPA in our review. Much of this is being focused on the D2 piece, so I'll lead with that. But there have been various discussions about could the record be read this way? Are there pauses that allowed her to step in? Did the trial judge actually turn to her and give her this opportunity? I heard lack of clarity. All those things mean that the petitioner can't be granted relief under D2. The record has to compel a finding that the trial judge failed on some factual matter, and it just cannot possibly compel that finding. As I've emphasized, I mean, the petitioner himself took a very different view of the record, and he now says the view that he took is objectively unreasonable. And I think that goes for the legal matters, too, Your Honor. There has to be something objectively unreasonable here, and the record can be read certainly either of two ways. That would be enough on clear error review, Anderson v. Bessemer City. It's certainly enough for the state to        Thank you,  Justice Alito? Justice O'Mara? You seem to be  that the only way that we could overturn the  Honor EPA is if the  court had said to her, sit down, counsel, you made your Batson challenge, period. Anything short of that, they couldn't err in finding a non-waiver, a waiver. I mean, given the entirety of this record, there's no Well, no,  I'm saying your argument seems to be that only if the trial court said, counsel, sit down, Batson's been preserved. I don't want to hear anymore. But that's the only way that on EPA review, we could say Mississippi made an unreasonable determination of fact. I mean, again, given this record, Where have we ever said that a waiver has to be that explicit? Don't we infer it from evidence? Well, I mean, even if that were true, Justice Sotomayor, this gets Well, even if it's true, an unreasonable doesn't mean that all interpretations of the record are correct. I'd like you to point me to one part of this record, one word by the way,    on race neutrality. But that's exactly the point, Justice Sotomayor. She has none of that. And she has multiple indications No, the problem is that she was never given an opportunity on this record. I'm not going to argue with you on this point. May I respond just  I think I can say something helpful on this. No, no, I was going to ask one last question on the preservation issue, not on the preservation issue, on the  jury analysis on appeal. The comparative jury analysis on appeal. In answer to Justice Barrett's question, appellate courts can do their own comparative jury analysis, even if not preserved below, correct? They can. That's what happened in   and Schneider. Do you believe the  Supreme Court says it cannot consider those arguments because of the waiver or that it's choosing not to consider them? It's saying that in general it does not, it can exercise discretion to do so. It could do so. Is that a plain error standard? Because plain error is what the       be preserved below. It would be plain error, correct? That's what has been said in the case. Flowers v. State 3, the  case, what the  said was  because of the error in the strike of juror Pittman, we apply the plain error rule to find a Batson violation occurred. So Mississippi has a similar plain error rule.  has discretion to overlook a  Batson   It has discretion. If the record is clear that there was a Batson violation, and we can argue about each individual juror, whether the record is clear or not, I want you to make an assumption if the record is clear that there was a Batson violation, would the Mississippi court have error in failing to conduct that review? And the answer is no. Certainly not under EDPA. No, none under EDPA. It's a constitutional violation in a case where the court below did not make an actual step 3 analysis, you're saying that it wouldn't have been error. That's consistent with the waiver or forfeiture of constitutional objections generally and with jury objections in  No, we apply plain error. But state courts don't necessarily have to do that. They can do pure discretion, they can do different approaches. Nothing in this Court's case is bar that justice set of my art. I would just emphasize that this is a rule that has been embraced by most federal courts of appeals and it's one that was surely reasonably applied here. Yes, because we apply plain error. Some do, some don't. You always have to apply plain error. Plain error is required by the rules of federal procedure. If an objection has not been preserved, the court has to   whether the error was  I'm sorry,  Whether the error was  May I respond to that one,  Yes. I come back to Ford v. Georgia, where the court affirmed that state courts can adopt these  rules. Those rules are going to block some claims, perhaps even some meritorious claims, and given that signal, it was surely reasonable to adopt this rule, which ultimately vindicates and enforces Batson itself and makes for better Batson rulings. Thank you. Justice Kagan. I want to take you back to the conversation that you and I were having and that you were having with Justice Kavanaugh, which is just this question of whether the Mississippi Supreme Court got it really wrong when it said that she had waived her argument that there was a  violation. And again, I'm just staring at this transcript, and I guess as to that question, I don't really see the ambiguity in this transcript, because this is coming after the fact of the prosecutor saying we had race-neutral reasons for all of them, and she says three times, I want to contest that, and the court says over and over, it's in the  it's in the  it's clear in the record. And when a court says that to you three times, I actually don't believe that it's in the  I'm not going to say what can you do. I think she could have done more. I think she could have said, judge, really, I'm not moving on to anything else until I get this out. But on the other hand, it's hardly ineffective assistance of counsel to make a different kind of choice, to say I don't want to antagonize this judge. If he's insisting on moving on, I better move on. That probably was a wrong decision. I'll say that that definitely was a wrong decision, but that's not the question before us. The question before us is only whether she waived her objection, and how could she possibly have waived her claim that there was a  violation when she says it three times and the court says it three times. It's in the record. You've done it. I really have to emphasize it's not a holding that she waived the objection or the claim. It's a holding that she waived the pretext argument. I'm saying that what they said, the pretext argument is just a way of establishing the Batson violation. So if you keep on saying there's a Batson violation here, then you're saying there's something wrong with what the state has told you about their race neutral justifications. If you tell me she had to use the word pretext in what she was saying, I'll tell you that's not the  And what I'm saying,  is that she had to give the judge a chance to rule on the comparative juror arguments that she later claimed were central to her argument. She did none of that.   okay, I'll put you to it. Show me what you got. So you don't have to give the judge a chance. And the judge said it's all in the record. It's all in the record. It's clear. Respectfully, he didn't say that. He agreed that the objection was in the   And all she said was I want to reserve the objection. And that's what he gave her a signal to. You think that the judge thought that she was only objecting in the same way she did at the very start of the inquiry, that she was just making a prime case? I mean, obviously the judge did not think that. The judge thought that she thought that there was a violation and he said enough. It's in the record. Whenever my friend or any hypothetical needs to suggest that the judge cut her off, it always has to use words that are not in the transcript. And she referred not to pretext, not to the desire to make more arguments. She didn't say, your honor, I didn't make some arguments that I would like to make. And every indication of this record is that he would have allowed her to. He allowed her to make an  argument challenging death when the actual baton challenges in step two and step three were occurring. She didn't say any of that and didn't give any indication. She still didn't do so in her post-trial motion. That's what I would emphasize, your honor. Should you lose, what is the appropriate remedy? Let's say you lose on the    Very good. This court would find there's an unreasonable determination of fact, but under 2254A, of course, we can only grant a writ if we find a violation of the Constitution. So there's obviously more work to be done after we decide the waiver issue. Can you explain how that's going to proceed? I mean, I think number one, there would need to be a showing of a substantive, I think that's in violation, potentially, overcoming E1, for example, in district court. If this court or the lower courts were to think that law and justice were shown in this case to warrant issuance of the writ, I mean, I think it would go down the  But we're likely, assume we're not going to make that inquiry. We're going to confine ourselves to what we spent the last two hours talking about, which is the waiver issue, okay? And we find an unreasonable determination on the waiver issue. What more does a federal court need to do? I mean, I think, as we've said in our papers, the possible remedy in that case when it goes back down the federal chain would be a writ that would require release if the Mississippi Supreme Court does not in a certain amount of time undertake whatever analysis this court holds to be lacking. So if that's do a new step three analysis in a light of the relevant arguments, that would be the measured remedy there. I think that would be consistent, for example, with what's appeared when, say, habeas is granted on a question of whether a confession was voluntary. You don't necessarily need to do a  You just need to see if the confession was  If it is, things can stand. I think similarly here. Justice Kavanaugh? A couple of things. First, I agree with you that the court does not need to do anything if at the point in the transcript we've been focused on, defense counsel said, I withdraw my absent objection or, having heard the asserted reasons, I have nothing on pretext. So I agree with you in that situation. But that's obviously, as Justice Kagan  what looks like it happened here. You've said that she could have jumped in again after that colloquium 175, after she twice raises it, but at the end of that, the district court says the court finds there to be no Batson violation. Now, again, as Justice Kagan said, could have jumped in, but at that point  Kagan said you've made the objections, you've preserved them, and there's no Batson violation. Right? I agree with that framing. Again, made the objection, Your Honor. I think that's the critical thing. There are two possibilities for why I think it got truncated here, which we've all explored. One is that the trial judge had a misunderstanding of what Batson required, didn't understand the third step, and that's in that sense that I read before, well, all the reasons were race neutral as to members, and so there's no Batson violation. That's one possibility. The other possibility, and Judge Mills in Mississippi   he's a very experienced district judge, says he's applying unreasonable. What he says happens is it stopped after two steps, simply put, no state court, whether it be the majority, conducted a full three-step Batson inquiry. He's generous to the trial court on this, I think. The trial court seemingly eager to proceed to the case itself, quickly deemed the reasons as race neutral, and moved on. The trial court's  perhaps understandable and relatable to this court, speaking to Judge Mills, trying to show empathy for the burdens on the trial judge, are error nonetheless. I think whether the trial judge misunderstood the third step, or the trial judge was just rushing it along to try to keep things moving or whatever, it just never happened. That's Judge Mills again applying AEDPA, or at least articulating it. I agree with  Thomas completely. We have to look through the AEDPA standards here. And so I appreciate that, Justice Kavanaugh. To take the second bit first, I would come back to Petitioner's own words where he declared on direct appeal that the trial judge did decide step three. And this is surely a fair reading of that record. That's page 484 of the transcript. And he again links that to the same parts of the  that we do in footnote 4 on page   of course that's true. But what I think the judge was really doing was he wanted to be clear. I am finding these race neutral in fact. I think that is what he was doing. That is surely a permissible view of the transcript. And therefore on clear error and certainly on ed for review I think it is the compelled view in this case.  this matters is this is a death penalty case. And he was 17 when he admitted to crime and he did not, not that this is good, but he was not the shooter, correct?  right. Not the fatal shooter. Thank you. I just want to understand your answer to justice Gorsuch on remedy. If we think the  Supreme Court was wrong, I don't understand how it gets back. You said something about getting back to the  courts. Wouldn't we send it back down below for the federal courts to analyze? I don't see the route of bouncing back.  not direct review. We didn't suggest remand to state courts. We are responding to the suggestion that the writ should issue here at all. The writ should issue ordering release or retrial. If a federal court is issuing the writ here, the most it can do is an order that would correct the violation which by hypothesis here is not conducting a full step three analysis. That could be something that is resolved by the state courts. You are saying the district court shouldn't do that? If we sent it back down you don't think that the district court or frankly the fifth circuit he said the court has what it needs in the record to look at the comparative juror analysis. Why couldn't the federal courts make that themselves? I think that would also be an option. If you sent it back down and said you were wrong to find waiver, it would have everything it needs to flat out rule on the  violation. You obviously know the merits of our position. If you     wrong to          violation. If you sent it back down and said you were wrong to find waiver, it would have everything it needs to flat    If you sent it          it needs   on the violation. If you sent it back down and said you were wrong to   it would have everything                            it needs to flat                 out rule on the violation. If you     wrong to   find waiver,         If you    you were wrong to  waiver, it would have everything it needs to flat out rule  violation. If you  sent it back down    find      to flat out rule  violation. If you     wrong to find waiver, it would have everything it needs to flat out rule violation. If you sent it   you were wrong to find  it would have everything it needs to flat out rule violation. If you sent it back down and said you were wrong to        find waiver, it would   it needs           waiver, it would   it needs to flat out rule violation. If you sent it  and said you were wrong to          If the juror comparison is clear from the record that there was a vaccine error, that could be reviewed and should be reviewed by the Mississippi court.    No. I think two points on that. One is just the existence of an error being plain is not sufficient to make mandatory plain error review. Under state law, the state court had discretion to consider that argument or not depending on the other prongs. If it was never done by the court, how could it not be an abuse of  to fail to have done it by someone? It's a  obligation to do a step three. It is a  obligation for the court to engage in step three, but I don't think it's an  obligation  a step three. The state court had found at step three that the prosecutor was not motivated by discriminatory intent. The state trial court without explanation overruled the objection and impaneled the jury. That's similar to what happened here. Even though there was no explicit I find the prosecutor stated reasons to be credible. How could there be a step three finding if usually that's evaluating whether the race         the      or a felony murder scenario. I'm trying to  the United States interest. Your brief doesn't devote a lot of time to defending the actual conviction. So what is the principle that you are seeking to have upheld in this case in which it's clear that the defense counsel said several times I have a objection and tried to preserve it in the court. Why is the United States interested in being involved in this case? Well, Your  the United States is a party in many trials, including many criminal trials, is subjected to  objections and defends in Batson cases. Our interest is in defending the right of courts of appeals to exercise their discretion to consider juror comparison arguments and not as I think petitioner, if I may,  not as petitioner argued in petitioner's  although it seemed to walk away from today, adopt a rule that appellate courts must consider juror comparison arguments when they are raised for the first time on  Thank you, counsel. Justice Thomas, any further? Justice Alito? Justice Kagan? Ms. Ferguson, I want to go back to what you were saying before, and I'll grant you something. I'm going to assume your view that the judge here did not collapse stage two and stage three, and the judge understood what he was doing and that the judge made a determination that there was no Batson violation, the determination that you would make at the end of the day. In exchange for my assuming your view on that, I need you to assume my view on something else, which is that the defense counsel understood that that's the stage that they were in. In other words, now they were talking about the ultimate Batson violation, and what she was objecting to was the finding of the ultimate Batson violation. So let's say that they were both on the same page. We understand that we're contesting the  Batson violation. So if you assume those two things and the court says there was no violation and the defense counsel says, I object to that. I think there was a Batson violation. And he said, I got that. I understand that. It's preserved. And she says, I want to make an argument about this. And he says, it's  How could it not be  I agree with the state that there's a distinction between preserving a claim and  particular argument. And simply saying, I disagree with the ultimate finding is not sufficient to preserve every possible pretext argument under the sun. So I think there needed to be some form of even gesturing at juror comparisons. There was nothing in the record at all until after trial to suggest that there was     the court saying again and again, it's in the record, I got it, it's preserved, she has to make clear what the particulars of her view is, why exactly there is a  violation. In order to preserve those particular pretext arguments for appeal, yes, under Mississippi law. MS. GORSICH. In fact, a lot of courts have issue preservation rules with respect to  not just claims or issues. That's correct, Your Honor. And we've never held those impermissible before. No, Your Honor, and in fact, this court has repeatedly reaffirmed both in the context of state courts and in Georgia, the court has reaffirmed procedural rules are permissible and this court affirmed that appeals in the federal system have discretion over when to accept  constitutional question before us that affects the United States in litigation.   No, Your Honor, it's quite common for us to appear.   Thank you, Counsel. Rebuttal, Mr. Perkovich? MR.  Just a few quick points. First, I want to  that there was an understanding that they clearly may and this court has done so routinely. That's our fundamental point on that. With respect to the procedural rules that Ford v. Georgia endorsed as a basic principle, we have no qualm with that. That is a timely objection rule. Of course, that's not applicable here. And with respect to a waiver rule and forfeiture, however it's framed, the problem is that it's not implementing Batson in Step 3. It's obstructing Batson in Step 3. And that's the work that's occurring in this case and the problem with that  With respect to the other stakeholders and the broader stakes for our society with regard to the equal protection clause in this context, we                 With regard to remedy,  of course, ushered in a prohibition of the discriminatory use of strikes in a way that improved upon swaying and provided a specific framework. And so when that framework breaks down as it did here, that's a  error. And so this has to return to its prior posture much the way the last time this court found a D2 violation in Miller- L., which is to the  court and for a  entered for the petitioner. Thank you, counsel. The case is submitted.